**Virginia Marie GRANT, Plaintiff,**

**v.**

**Lee JOHNSON, Multnomah County Circuit Court Judge, in his official capacity, Defendant.**

**Civ. No. 89–269–FR.**

United States District Court, D. Oregon.

Feb. 22, 1991.

Robert C. Joondeph, Leslie Kay, Portland, Or., for plaintiff.

Dave Frohnmayer, Atty. Gen., Pamela L. Abernethy, Luther L. Jensen, Asst. Attys. Gen., Salem, Or., for defendant.

## OPINION

FRYE, District Judge:

The matters before the court are 1) the motion for summary judgment of plaintiff, Virginia Marie Grant (# 25); and 2) the motion for summary judgment of defendant, Lee Johnson, in his official capacity as a Multnomah County Circuit Court Judge (# 33).

## UNDISPUTED FACTS

Virginia Grant is a thirty-six year old mother of two residing in Portland, Oregon. Virginia Grant used to be married to Kevin Grant.

On November 28, 1988, Kevin Grant, through his attorney, Rodney J. Beck, presented to Judge Johnson a petition for the appointment of a guardian and temporary guardian for Virginia Grant. In his petition, Kevin Grant sought an order of the court appointing Frances Sherrill, the mother of Virginia Grant, as "temporary guardian, without notice, for a period not to exceed six (6) months or until such time as this court grants petitioner's petition for establishment of a permanent guardianship for Virginia Marie Grant." Exhibit D to Plaintiff's Motion for Summary Judgment, p. 7—Petition for Appointment of Guardian and Temporary Guardian, p. 4, para. 10. Virginia Grant was not provided notice of the petition and was not provided an opportunity to appear before Judge Johnson or to retain counsel.

The petition stated, in part, as follows:

Appointment of a guardian and temporary guardian is sought because the proposed protected person is unable, without assistance, to properly manage or care for herself because of her inability to receive and evaluate information effectively or communicate decisions and her ability is impaired to such an extent that

she presently lacks the capacity to meet the essential requirements for her physical health or safety due to her suffering from psychological problems preliminarily diagnosed at Providence Medical Hospital as high anxiety and panic reaction.

The factual basis for requesting the appointment of a guardian for Virginia Marie Grant is based upon the attached letter from Dr. Robert Gray, M.D., ... the attached Affidavit of Frances Sherrill, the proposed guardian and temporary guardian, ... and the attached Affidavit of your petitioner, Kevin Grant.

Plaintiff's Exhibit D, pp. 4–5—Petition, paras. 2 and 3.

Attached to the petition was a handwritten letter by Robert H. Gray, M.D., a physician who had treated Virginia Grant for a gall bladder condition since November 18, 1988, including performing surgery on her gall bladder. Dr. Gray stated in his letter that "[o]bservation in the office and later in the hospital suggested a severe emotional problem over which she has little control." Plaintiff's Exhibit D, p. 10. In his letter, Dr. Gray opined that Virginia Grant "will need long-term psychiatric assistance." Plaintiff's Exhibit D, p. 11.

The affidavit of Frances Sherrill provided, in pertinent part:

I believe that it is in the best interest that a guardian be appointed for Ginger Grant because she is unable to control her own life, let alone make decisions for herself or her family because of psychiatric problems.

In 1968 or 1969, Ginger was placed at Dammasch State Hospital with a diagnosis of borderline schizophrenia. She received six to eight weeks of treatment at that time. I believe that she is now suffering from a similar problem and is in need of immediate psychiatric treatment which she undoubtedly will refuse if given an opportunity.

I have discussed this matter with Dr. Keith Griffin, psychiatrist at Providence Medical Center.... Dr. Griffin has indicated to me that my daughter is very sick.

Plaintiff's Exhibit D, pp. 12–13.

Judge Johnson granted the petition pursuant to the provisions of O.R.S. 126.133 and signed an order on November 28, 1988 appointing Frances Sherill as the temporary guardian of Virginia Grant to serve for a period not to exceed six months or until a permanent guardianship is established. The order appointing her as a temporary guardian of Virginia Grant authorized Sherrill to "provide, consent to or approve any and all necessary medical or other professional care, counsel, treatment or service for Virginia Marie Grant." Plaintiff's Exhibit C, p. 1—Order Appointing Temporary Guardian, p. 1. The order further authorized Sherrill "to immediately place Virginia Marie Grant in a medical care facility, if necessary." Order, p. 2. In his order, Judge Johnson waived an investigation and a report by a visitor as required by O.R.S. 126.103 prior to the appointment of Sherrill as temporary guardian of Virginia Grant.

Pursuant to the order signed by Judge Johnson, Frances Sherrill consented to the placement of Virginia Grant in the psychiatric ward at Providence Medical Center from November 28, 1989 until December 12, 1989. During portions of this time, Virginia Grant was denied visitors, denied the use of the telephone, and denied any opportunity to contact legal counsel. At times, Virginia Grant was placed in a ward which was locked, and her movements were monitored by video camera.

On December 2, 1988, five days after she had been involuntarily hospitalized, Virginia Grant was served with copies of documents entitled "Petition for Appointment of Guardian and Temporary Guardian" and "Notice of Petition for Appointment of Guardian and Temporary Guardian." The Notice of Petition for Appointment of Guardian and Temporary Guardian, prepared by the attorney for Kevin Grant, states as follows:

NOTICE IS HEREBY GIVEN that Kevin Grant, has filed a petition for appointment of Frances Sherrill as guardi-

an of Virginia Marie Grant in Multnomah County Circuit Court, State of Oregon, Case Number 8811–92202 on November 28, 1988.

Any objections thereto must be filed in writing in the guardianship proceeding in the above-entitled court, Multnomah County Courthouse, 1021 S.W. Fourth Avenue, Portland, Oregon, 97204, on or before the 27th [1] day of December, 1988.

The following information is provided:

1. A Visitor shall be appointed by the court to investigate and file a due report with the court after examining the alleged incapacitated person and others who have relevant information concerning the alleged incapacity.

2. The purpose of a hearing to any objections filed is to determine whether or not there is sufficient basis by clear and convincing evidence that the protected proceeding should be instituted.

3. You are further advised that you have the following rights pursuant to ORS 126.127:

A. You have the right to be represented by an attorney and to be informed of any free or low cost legal and other relevant services available in the area;

B. You have the right to request a hearing;

C. You have the right to present evidence and cross examine witnesses;

D. You have the right to request that the power of the guardian, if any, be limited by the court; and

E. You have the right to request removal of the guardian or any modification of the guardianship order at any time.

Plaintiff's Exhibit D, pp. 1–3.

On December 7, 1988, nine days after she was involuntarily hospitalized, Virginia Grant was permitted to call an attorney.

On December 12, 1988, Virginia Grant was released from the Providence Medical Facility. On December 16, 1989, Kevin Grant filed a motion to terminate the guardianship. This motion was supported by the affidavits of Frances Sherrill and of Kevin Grant. The motion was granted, and the guardianship proceeding was terminated.

On August 16, 1989, Judge Johnson issued a newsletter to the probate practitioners in Multnomah County announcing proposed rules of the probate court. Section 9.090 of that newsletter relates to temporary guardianships and states, in part:

[I]f the court finds that an emergency exists requiring immediate action, the court will appoint a temporary guardian for a specific purpose and for a period of time not to exceed 30 days. The order appointing a temporary guardian will require that the notice required by ORS 126.127 shall be given within 5 business days from the date of the order. If a hearing on the appointment is requested, it shall be set as soon as possible.

Exhibit F to Plaintiff's Motion for Summary Judgment.

Virginia Grant subsequently brought this action under 42 U.S.C. § 1983, seeking a declaration that the Oregon statute relating to temporary guardianships, O.R.S. 126.133, is unconstitutional, and seeking an injunction that will prevent the further application of that statute to her and to others.

## CONTENTIONS OF THE PARTIES

Judge Johnson contends that he is entitled to summary judgment on the grounds that 1) the issuance of an *ex parte* order by a Circuit Court Judge of the State of Oregon is insufficient state action to support a claim under 42 U.S.C. § 1983; 2) Virginia Grant has no standing to challenge the

---

**1.** Two purported copies of the Notice of Petition for Appointment of Guardian and Temporary Guardian were presented to this court as exhibits—one by Virginia Grant and one by Judge Johnson. The purported copy submitted by Judge Johnson states that objections must be filed in writing by *December 20, 1988.* The purported copy submitted by Virginia Grant states that objections must be filed in writing by *December 27, 1988.* The purported copy of Judge Johnson appears to bear the original signature of Rodney Beck, counsel for Kevin Grant. The purported copy of Virginia Grant appears to be a conformed copy dated December 9, 1988. Affidavit of Patricia Woltring in Support of Defendant's Motion for Summary Judgment, paras. 3, 4 and 5.

constitutionality of O.R.S. 126.133 in federal court; 3) Virginia Grant has an adequate remedy under the laws of the State of Oregon; 4) this court should abstain from exercising jurisdiction over a state circuit court judge under the principles of federalism and comity as stated in *Younger v. Harris*, 401 U.S. 37 (1971); 5) Virginia Grant received due process of law because she received actual notice, an opportunity for a hearing, and an explanation of her right to counsel, prepared by her counsel, within four days after the issuance of the order appointing a temporary guardian; 6) there is no possibility of a future violation because Judge Johnson has promulgated a court rule specifically requiring that meaningful notice and an opportunity for a hearing be included with all orders appointing temporary guardians; and, finally, 7) if the court concludes that Virginia Grant is entitled to relief, the court should limit the relief to declaratory relief.

Virginia Grant contends that the actions of Judge Johnson caused her to be deprived of her liberty and property without due process of law and, therefore, she is entitled to maintain this action under 42 U.S.C. § 1983, and that upon the undisputed facts, she is entitled to the relief she seeks as a matter of law.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS

The issue in this case is whether Virginia Grant is entitled to a judicial declaration that O.R.S. 126.133 is unconstitutional as applied by Judge Johnson because she was denied due process of law when she was deprived of her liberty and property.

### 1. *State Action*

■ "The action of state courts in imposing penalties or depriving parties of other substantive rights without providing adequate notice and opportunity to defend, has, of course, long been regarded as a denial of the due process of law guaranteed by the Fourteenth Amendment." *Shelley v. Kraemer*, 334 U.S. 1, 16, 68 S.Ct. 836, 843, 92 L.Ed. 1161 (1948). Virginia Grant was deprived of her liberty and personal freedom by operation of the laws of the State of Oregon through the action of Judge Johnson. Therefore, she is entitled to challenge the provisions made by those laws for providing her with due process of law under 42 U.S.C. § 1983.

### 2. *Standing*

■ This court adheres to its prior ruling in this case that there is an actual controversy and a threat of future injury sufficient to support a claim for declaratory and injunctive relief even though Virginia Grant is now divorced from Kevin Grant who sought the guardianship order. Opinion of August 9, 1989.

### 3. *Equity Jurisdiction*

■ Judge Johnson contends that if the facts of this case should repeat themselves, Virginia Grant could ask the Circuit Court of the State of Oregon to set aside an *ex parte* order on the grounds that it was granted in violation of her constitutional rights. Judge Johnson also contends that Virginia Grant has an adequate remedy at law, and the equitable relief which she seeks is not available.

This court adheres to its prior ruling that this case presents a case and controversy adequate to support the claims of Virginia

Grant for declaratory and injunctive relief. Opinion of August 9, 1989.

### 4. *Abstention*

■ Judge Johnson requests that this court should abstain from exercising jurisdiction under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because Virginia Grant could have challenged the *ex parte* order appointing a temporary guardian by seeking to have the order set aside in the state courts.

Federal courts are required to abstain from intervention in state court proceedings when 1) there are pending state proceedings, 2) that involve important state interests, 3) in which the federal plaintiff can obtain a decision on a federal issue. *Younger, supra.* There is no pending state proceeding involving this case and no state appellate remedies yet to be exhausted so as to require this court to abstain from determining the federal constitutional issues presented here.

### 5. *Due Process*

Judge Johnson contends that Virginia Grant was not deprived of due process of law because she received actual notice of the state proceeding, an opportunity for a hearing, and an explanation of her right to counsel within four days after the *ex parte* order was issued. Virginia Grant contends that the process afforded her did not satisfy federal constitutional minimum requirements because she was deprived of her liberty without meaningful notice of the proceedings, without a prior hearing, and without the assistance of appointed counsel.

■ Procedural due process imposes constraints on governmental decisions which deprive individuals of their liberty within the meaning of the due process clause of the fifth and fourteenth amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Therefore, a person has a substantial liberty interest in avoiding mental hospitalization. *Vitek v. Jones*, 445 U.S. 480, 491–92, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)

(commitment to mental hospital entails a "massive curtailment of liberty" and requires due process protection); *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"). The emergency guardianship procedure set forth in O.R.S. 126.133 contemplates restraints on the liberty of alleged incapacitated persons and, therefore, the due process protections under the Fifth and Fourteenth Amendments to the United States Constitution must be afforded to those persons.

■ O.R.S. 126.133, which provides for the appointment of a temporary guardian, states as follows:

> **Appointment of temporary guardian for incapacitated person.** If the court finds that an emergency exists and no guardian has been appointed ⸱... or that the welfare of the incapacitated person requires immediate action, the court may, with or without notice, appoint a temporary guardian for the incapacitated person for a specified period and specified purpose. A temporary guardian has the care and custody of the ward for the purpose so specified.... A temporary guardian may be removed at any time and shall make any report the court requires. ORS 126.003 to 126.143 apply to temporary guardians.

This court must determine whether the requirements of O.R.S. 126.133, which were followed in this case, meet the minimum requirements of the Due Process Clause of the United States Constitution.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court repeated that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" 424 U.S. at 333, 96 S.Ct. at 902 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). It has long been recognized that "due process is flexible and calls for such procedural protections as the particular situation de-

mands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In *Mathews*, the United States Supreme Court explained:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35, 96 S.Ct. at 903.

Pursuant to *Mathews*, the private interest affected by the emergency guardianship proceedings in this case was the curtailment of the personal liberty of Virginia Grant to use and control her property for a period of six months.

Pursuant to *Mathews*, the court must next address the risk to the alleged incapacitated person of an erroneous curtailment of liberty and the loss of freedom to use and control property under the existing procedures. The statute at issue permits the *ex parte* appointment of a guardianship without notice to the alleged incapacitated person. The statute dispenses with an appearance by the alleged incapacitated person and fails to afford any opportunity for the alleged incapacitated person to request a hearing prior to the imposition of the guardianship. The statute sets no specific time limit on the length of the temporary guardianship. The case before the court involves the appointment of a temporary guardian for a period of six months.

The statute requires that the court find that "an emergency exists," but requires no medical evidence or any independent investigation into the facts to support such a finding.

The statute does not require notice to the alleged incapacitated person within a specific period or provide for any specific post-deprivation hearing or mechanism for the incapacitated person to object to the proceeding. The statute states that O.R.S. 126.003 to 126.143 applies to temporary guardians, but nowhere in O.R.S. 126.003 to 126.143 does it provide a procedure for obtaining a meaningful hearing for individuals for whom a temporary guardian has been appointed *without notice*. The provisions of O.R.S. 126.003 to 126.143 relate only to proceedings conducted with prior notice and the opportunity for a hearing and full procedural rights prior to the appointment of the guardian.

The notice provided to Virginia Grant four days after she was deprived of her liberty attempted to reconcile the provisions of O.R.S. 126.003 to 126.143 with the fact that the order appointing a guardian had already been signed. For example, the notice stated that "[t]he purpose of a hearing to any objections filed is to determine whether ... the protected proceeding should be instituted." However, the proceeding had already been completed. The notice stated that Virginia Grant had a "right to be represented by an attorney and to be informed of any free or low cost legal ... services," but gave no indication of how to obtain an attorney or how to obtain information concerning free or low cost legal services. The notice simply stated that the court would appoint a visitor to investigate and file a report, but did not indicate how or when such a visitor would be appointed.

The need for procedural protections in the context of the appointment of temporary guardianships is at least as critical, if not more so, than in the civil commitment proceedings which are initiated by a state. The guardianship which arises from the statute providing for the appointment of temporary guardianships entrusts the life of a person to a private party whose motives may be more questionable than the motives of a disinterested state. Additional or substitute procedures would bring before a judicial officer in a timely and meaningful manner the views of the alleged incapacitated person, and therefore would provide a significant protection for

the alleged incapacitated person from an erroneous deprivation of his or her liberty.

Finally, the court must consider the burdens to the State of Oregon of additional or substitute procedures. The State of Oregon has an important interest in seeing that its citizens do not harm themselves and/or others by their actions. Emergency guardian proceedings are intended to further this state interest. However, the State of Oregon has no interest in suspending the personal freedoms of those citizens who are competent. Additional or substitute procedures which would provide a meaningful opportunity for an alleged incapacitated person to present his or her case to a judicial officer in an exigent manner would not place an unreasonable burden on the State of Oregon. In such a private proceeding, the State of Oregon may require a petitioner to bear the fiscal or administrative burden for services necessary to protect the rights of the alleged incapacitated person, such as attorney fees, medical fees, or fees of other third parties deemed necessary.

All of the factors set out in *Mathews* compel this court to conclude that the provisions of O.R.S. 126.133 for the appointment of a temporary guardian do not provide the minimum due process protections owed to an alleged incapacitated person.

6. *Subsequent Rule*

Judge Johnson asserts that a rule adopted by the Multnomah County Circuit Court after Virginia Grant filed this case, which provides that "notice required by ORS 126.127 shall be given within 5 business days from the date of the order" and that "[i]f a hearing on the appointment is requested, it shall be set as soon as possible," cures any constitutional deficiency. A court rule does not correct a statutory deficiency. Due process protections must be provided in a statutory scheme.

7. *Relief*

Virginia Grant is entitled to a declaration that O.R.S. 126.133 is unconstitutional. A stay pending indeterminate legislative process will not be granted.

The court declines to enter injunctive relief preventing Judge Johnson from applying this statute to Virginia Grant or others in the future in that there is no showing that Judge Johnson will continue to apply a statute which has been declared unconstitutional.

CONCLUSION

Virginia Grant's motion for summary judgment (# 25) is granted as to declaratory relief and denied as to injunctive relief. Judge Johnson's motion for summary judgment (# 33) is denied as to declaratory relief and granted as to injunctive relief. Counsel for Virginia Grant shall prepare the appropriate judgment.