**Ernest C. HECTOR, Plaintiff-Appellant,**

v.

**Herman WIENS, Individually and dba Wiens Feed Lot, et al., Defendants-Appellees.**

**No. 74–1727.**

United States Court of Appeals, Ninth Circuit.

Feb. 23, 1976.

13. The majority's footnote 7 is misleading. The government has never conceded that the materials sought to be discovered are discoverable under the Jencks Act because they fall within the narrow definition of discoverable statements contained in § 3500(e). It has merely argued that those materials fall within the general proscription of pretrial discovery contained in § 3500(a), *see* note 2, *supra*, thus rendering them non-discoverable under Rule 16. Notably, the definition of discoverable statements contained in § 3500(e) applies by the terms of that section to the affirmative discovery provisions of §§ 3500(b), (c), and (d), but not to the proscription of § 3500(a).

Frank F. Jestrab (argued), of Jestrab & Bjella, Williston, N. D., for plaintiff-appellant.

Thomas E. Towe (argued), of Towe, Neely & Ball, Billings, Mont., for defendants-appellees.

OPINION

Before BROWNING and WALLACE, Circuit Judges and TURRENTINE,* District Judge.

PER CURIAM:

This is an action, *inter alia,* to recover damages for alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Defendant bank moved to dismiss the cause for failure to state a claim under the Securities Acts on the ground that the transaction between plaintiff and defendant bank did not involve a security. The district court, treating the motion to dismiss as one for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, granted defendant's motion. We reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hector is a North Dakota grain farmer. Defendants are a Montana feedlot and a Montana bank. The parties had a business arrangement whereby the feedlot was to buy, feed, and sell cattle and hogs for the farmer's account. The bank financed all livestock purchases and took notes from the farmer secured by the cattle and hogs. The bank loans were to be repaid from proceeds of sale of fattened cattle and hogs.

At the same time, the farmer was to provide grain from his farm to the feedlot for use in feeding cattle and hogs. The bank was to advance to the farmer an amount equal to his costs in producing and shipping the grain, taking notes from the farmer secured by the grain. These notes were also to be repaid from sale of the livestock. The value of the grain delivered was then to be deducted from the feedlot's ordinary charges for feeding and tending the animals.

This arrangement operated for some time before the bank discovered that the animals

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

and feed on the feedlot were not sufficient to secure the balances on the loans outstanding to plaintiff. At the present time, plaintiff has outstanding unpaid notes to the bank in the amount of approximately $262,000.

Plaintiff filed a complaint with six causes of action. The sixth cause of action alleged violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. The bank filed a motion to dismiss the sixth claim. The district court, treating the motion as one for summary judgment, granted the motion on the ground that there was no sale of a "security" within the meaning of the Securities Acts. The Court directed that judgment be entered in favor of the defendant on the sixth claim. This appeal followed. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1291.

■■■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of clearly establishing the lack of a triable issue of fact. Furthermore, the trial court should resolve all reasonable doubts touching the existence of a genuine issue as to a material fact against the moving party. See Moore's Federal Practice ¶ 56.15(3) (1974) and citations therein.

## II. EXISTENCE OF INVESTMENT CONTRACT

■■ The 1933 Securities Act and the 1934 Securities Exchange Act define "security" to include an "investment contract." 1933 Securities Act § 2(1), 15 U.S.C. § 77b(1); 1934 Securities Exchange Act § 3(a)(10), 15 U.S.C. § 78c(a)(10). The United States Supreme Court has defined an investment contract for purposes of the Securities Acts as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." S. E. C. v. W. J. Howey Co., 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244, 1249 (1946). The Howey test thus contains three elements (1) An investment of money, (2) in a common enterprise, and (3) an expectation of profits solely from the efforts of others.

■■■ We proceed to examine each of these three elements with respect to this case, keeping in mind the Court's admonition that the definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Id. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250. We are further mindful that the Securities Acts are remedial legislation requiring broad and liberal construction and that "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967).

### A. Investment of Money

■■■ The district court held and the defendant argues that the first requirement of the Howey test is not met because the plaintiff made no investment of his own money in the venture. They contend that plaintiff cannot invest his "credit." However, an "investment of money" means only that the investor must commit his assets to the enterprise in such a manner as to subject himself to financial loss. El Khadem v. Equity Securities Corp., 494 F.2d 1224 (9th Cir. 1974), cert. denied, 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 146 (1974). In El Khadem, this Court held that the giving of a promissory note was sufficient to meet the "investment of money" requirement of the Howey test.

Here, plaintiff gave the bank his promissory note and the bank in turn gave the money to the feedlot to purchase livestock and feed. When the investment went sour, plaintiff was still liable on the promissory

note and hence was subject to financial loss. Therefore, plaintiff made an "investment of money" for the purposes of the *Howey* test.

## B. *Common Enterprise*

■ The second requirement of the *Howey* test is a "common enterprise." This Court has defined a common enterprise as "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *S. E. C. v. Glenn W. Turner Enterprises*, 474 F.2d 476, 482 n. 7 (9th Cir. 1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). The commonality required is vertical (between the investor and the promoter) rather than horizontal (among multiple investors).

Defendant bank maintains that although the fortunes of the plaintiff may have been interwoven and dependent upon the efforts and success of defendant feedlot, the same is not true for the bank—that the bank simply loaned money to the plaintiff. The district court apparently agreed and held that the "common enterprise" requirement was not met because this case involved "a simple loan by the defendant bank to the plaintiff."

Plaintiff, on the other hand, asserts that a "common enterprise" existed among plaintiff, the feedlot, and the bank. Plaintiff alleges that the bank entered into a common scheme with the feedlot whereby the feedlot would seek potential customers for the feedlot and refer them to the bank for recommendations and livestock financing. Plaintiff contends that defendant bank agreed to such a plan in order to safeguard its loan to the feedlot and to further its business of making livestock loans. Hence, there is a genuine issue of material fact as to the existence of a common enterprise and the bank's liability as a participant.

## C. *Profits Solely From The Efforts of Others*

■ The third requirement of the *Howey* test is "an expectation of profits solely from the efforts of a promoter or third party." This Court has rejected a literal application of "solely" because it would frustrate the remedial purposes of the Securities Acts. *S. E. C. v. Glenn W. Turner Enterprises*, 474 F.2d 476, 482 (9th Cir. 1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). This Court has found the existence of an investment contract even though there may be some participation by the investor in the enterprise. The prevailing test is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.*

The district court held that the plaintiff was not an investor who was led to expect profits solely from the efforts of others because the plaintiff took an active role in the venture by supplying grain to the feedlot. Defendant bank further asserts that the plaintiff made frequent visits to the feedlot and assisted in purchasing some hogs. On the other hand, plaintiff alleges that the feedlot made all the managerial decisions: When, what, and how many animals to buy; when, what and how much to feed the animals; and when, to whom, and at what price to sell the animals. Therefore, it appears that there is a genuine issue of material fact as to who had control of "those essential managerial efforts which affect the failure or success of the enterprise."

Lest this opinion be misunderstood, we stress that we are not holding that the arrangement in this case was necessarily an investment contract. We hold only that there are genuine issues of material fact which if found in plaintiff's favor could support the existence of an investment contract and that granting defendant's motion for summary judgment was therefore error.

Defendant bank has raised several additional grounds for affirming the lower court's opinion. However, these grounds were not considered by the district court nor adequately briefed by the parties on appeal. Therefore we remand these ques-

tions to the district court for such further consideration as it deems appropriate.

REVERSED AND REMANDED.