**LaRhonda L. WILLIAMS, Plaintiff,**

**v.**

**SNYDER ROOFING & SHEET METAL, INC., an Oregon corporation, Defendant.**

**Civil No. 97–142–FR.**

United States District Court, D. Oregon.

March 11, 1998.

Robert A. Birk, Portland, OR, for Plaintiff.

Roger Hennagin, Roger Hennagin, P.C., Lake Oswego, OR, for Defendant.

## OPINION AND ORDER

FRYE, District Judge.

The matter before the court is the defendant's motion for partial summary judgment (# 13).

## BACKGROUND

The plaintiff, LaRhonda L. Williams, filed this action against the defendant, Snyder Roofing & Sheet Metal, Inc. (Snyder Roofing), an Oregon corporation, alleging claims for sexual harassment, a sexually hostile work environment, retaliation, and constructive discharge in violation of federal and state laws.

Snyder Roofing moves the court for summary judgment on the claims for constructive discharge, retaliation, and a hostile work environment.

## UNDISPUTED FACTS

LaRhonda Williams was employed by Snyder Roofing as a receptionist from January 8, 1996 until May 7, 1996.

Christie St. Martin, the office manager at Snyder Roofing, states in her affidavit, in part, as follows:

3. I am employed by Snyder Roofing as its Office Manager and have held that position since September, 1993.

4. In my position I am responsible for supervising the office staff including hiring and firing.

5. The working atmosphere at Snyder's offices has historically involved a large degree of tolerance toward practical joking, telling of stories and jokes with sexual innuendoes and general horseplay among its employees. Estimators, job superintendents and others would engage in this type of conduct in the reception area. Receptionists who were employed by Snyder during my tenure as office manager prior to hiring plaintiff did not object to this type of behavior.

6. In December, 1995, I interviewed LaRhonda Williams for the position of receptionist.

7. During the interview I asked plaintiff whether bad language offended her. Plaintiff responded that it did not. During this initial interview I told plaintiff that there was a lot of stress on the job and asked plaintiff if she could handle stress. Plaintiff responded affirmatively.

Affidavit of Christie St. Martin, pp. 1–2.

Williams describes in her affidavit incidents of sexual comments and touching without permission. Williams states that her workstation was in close proximity to the desks and offices of several other co-workers and management; that a co-worker brought a large styrofoam penis to her work area; that she was asked to page "Jimmy Dean" over the company pager system, only thereafter realizing that it was a joke about a man's sex organ; and that she was asked by co-workers to leave work and go drinking with them. These co-workers remarked that they could "sell" her for money and said they'd "take good care of [her];" that co-workers walked by blowing kisses at her; that an office in the warehouse had a calendar on the wall with pictures of nude women, featuring exposed breasts and pubic hair; that a co-worker walked by her a number of times sticking out and wiggling his tongue and raising his eyebrows; that the president/owner grabbed her with both hands while she was reaching for some paper items on a high shelf and commented "that's the best time to get them, when their hands are over their heads;" and that other managers made noises of spurting, pounding and moaning along with sexual comments.

Williams states, in part, in her affidavit that she complained to the office manager on different occasions, and that after she complained:

... the men involved ignored me, stopped talking to me and ignored [me] even when I would try to talk to them face to face. They did not even talk to me when I needed to talk with them as part of my job of handling their incoming phone calls and customer inquiries.

23.  After days of trying to put up with this silent treatment, feeling ostracized, feeling ill in the morning before going to work, and even missing some days from work with feeling sick about that treatment, I resigned on May 7.

Affidavit of Plaintiff in Opposition to Motion for Summary Judgment, pp. 6–7.

## CONTENTIONS OF SNYDER ROOFING

Snyder Roofing concedes that "[t]here is no doubt here that defendant's management knew that plaintiff's co-workers behaved in a manner that might be offensive to some people." Memorandum in Support of Partial Summary Judgment, p. 3. However, Snyder Roofing contends that Williams' claims of a hostile work environment, retaliation and constructive discharge should be dismissed based upon the doctrines of waiver and/or equitable estoppel. Snyder Roofing contends that Williams was informed at the interview that she would be exposed to bad language and a great deal of stress; that under these circumstances, her agreement to accept the position constitutes a waiver of any right she had to complain about the behavior of co-workers; and that she should be estopped from claiming any damages for a hostile work environment prior to the filing of her complaint because Snyder Roofing detrimentally relied upon Williams' representation that bad language would not offend her.

## CONTENTIONS OF WILLIAMS

Williams contends that a warning regarding bad language and stress in the initial interview does not constitute a knowing waiver of Williams' right to be free from a sexually hostile work environment. Williams contends that management and co-workers participated in the sexually hostile conduct; that she complained repeatedly of this conduct; and that her claims should go forward.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976).

## APPLICABLE LAW

Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir.1994), the plaintiffs were employed by the Prudential Insurance Company of America as sales representatives. As part of their employment applications, the plaintiffs were asked to sign a Standard Application for Securities Industry Registration (U–4 form), which included a provision agreeing "to arbitrate any dispute, claim or controversy that may arise between me or my firm." *Id.* at 1302. The defendant moved the court to compel the plaintiffs to arbitrate their claims under Title VII.

The court in *Lai* stated that "[t]he issue in this case ... is under what circumstances individuals may be deemed to have waived their rights to pursue remedies created by Title VII and related legislative enactments." *Id.* at 1303. The court concluded that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Id.* at 1305. The court stated:

[E]ven assuming that appellants were aware of the nature of the U–4 form, they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits. The U–4 form did not purport to describe the types of disputes that were to be subject to arbitration. Moreover, even if appellants had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate

Title VII claims. That provision did not even refer to employment disputes.

*Id.*

### RULING OF THE COURT

■ In support of its position that Williams waived her statutory remedies under Title VII in the initial interview and/or that she is equitably estopped from pursuing her statutory rights under Title VII, Snyder Roofing relies exclusively upon the affidavit of its office manager, Christie St. Martin, who states, in relevant part:

6. In December, 1995, I interviewed LaRhonda Williams for the position of receptionist.

7. During the interview I asked plaintiff whether bad language offended her. Plaintiff responded that it did not. During this initial interview I told plaintiff that there was a lot of stress on the job and asked plaintiff if she could handle stress. Plaintiff responded affirmatively.

Affidavit of Christie St. Martin, p. 2.

St. Martin did not refer to any statutory remedies or describe to Williams any types of disputes which could arise. No facts were stated which would put Williams on notice that she was agreeing to waive her statutory right to work in an environment free from discriminatory intimidation, ridicule and insult. Assuming the facts in this case in the light most favorable to Snyder Roofing, this court finds that the facts relied upon by Snyder Roofing do not as a matter of law constitute a knowing waiver of Williams' statutory rights under Title VII. Williams is not equitably estopped from proceeding with her claim for damages for a sexually hostile work environment because of her representation in the initial employment interview that bad language would not offend her.

IT IS HEREBY ORDERED that the defendant's motion for partial summary judgment (# 13) is DENIED.